UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| HAZARD COAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:20-CV-010-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| AMERICAN RESOURCES | ) | **AND ORDER** |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on two motions filed by Plaintiff Hazard Coal Corporation ("Hazard Coal"). The first motion is styled as "Motions to: (i) Certify the Memorandum Opinion and Order [R. 81] and Order Denying Motion for Reconsideration [R. 99] Final and Appealable With No Just Reason for Delay; (ii) Suspend and Modify Injunctions/Stays to Certify the Opinion and Order as Final and Appealable to Allow Hazard Coal to Exercise Lease Termination Rights; and (iii) Order [American Resources Corporation] to Vacate Hazard Coal's Property." [R. 103]. For ease of reference, the Court refers to this motion as the "Motion to Certify." The second motion asks the Court to suspend Local Rule 7.1(d)'s page limitations for the Motion to Certify. [R. 104]. The Court refers to this second motion as the "Motion to Exceed Page Limit." Defendants American Resources Corporation and Perry County Resources, LLC (collectively, "ARC") filed a response to the motions, [R. 105], and Hazard Coal replied, [R. 106]. However, prior to filing these motions, ARC had appealed the Court's September 30, 2021 Memorandum Opinion and Order, [R. 81], and September 9, 2022 Order Denying Motion to Reconsider, [R. 99]. *See* [R. 101 (Notice of Appeal)].  That appeal was recently dismissed, [R. 108; R. 109]. This matter is fully briefed, and the pending motions are ripe for review. For the reasons set forth

- 1 -

below, the Court will grant the Motion to Exceed Page Limit, [R. 104], and grant in part and

deny in part the Motion to Certify, [R. 103].

## I. BACKGROUND

The Court provided a detailed recitation of the facts of this case in its September 30, 2021

Memorandum Opinion and Order, [R. 81]. Only a brief summary of those facts is necessary here.

In 1981, Hazard Coal entered into an agreement ("the Lease") by which it leased certain

coal property and coal seams to Whitaker Coal Corporation. [R. 81, p. 2; R. 44-2]. Perry County

Coal, LLC ("Perry County Coal") eventually assumed Whitaker Coal Corporation's interest in

the Lease and was therefore permitted to mine coal from and transport coal over the leased

property. [R. 81, p. 2; R. 44-3, ¶ 4; R. 44-2, pp. 6–9]. In 2019, Perry County Coal's parent

company petitioned for bankruptcy. [R. 81, p. 5; R. 61-2, p. 2]. Through the bankruptcy

proceeding, Perry County Coal's assets, including its interest in the Lease, were sold to ARC.

[R. 81, p. 6; R. 44-8, p. 1]. The Bankruptcy Court entered a Sale Order approving of the sale of

the debtors' assets and the assumption and assignment of the debtors' contracts, including the

Lease. [R. 81, p. 7; R. 36-6; R. 36-7].

Hazard Coal then made several challenges to the Sale Order in different forums. [R. 81,

p. 8]. Among other things, Hazard Coal sought a declaratory judgment from the Bankruptcy

Court that the Lease terminated prior to the filing of the bankruptcy petitions because Perry

County Coal had failed to pay the 2018 royalties due under the Lease, and the Lease was

therefore not a part of the bankruptcy estate. *Id.*; [R. 61-2, p. 2]. Hazard Coal also asked the

Bankruptcy Court to reconsider its Sale Order. [R. 81, p. 8; R. 61-2, p. 2]. On January 3, 2020,

the Bankruptcy Court entered an order that denied Hazard Coal's motion for reconsideration and

explained that the Lease was properly included in the bankruptcy estate and Hazard Coal's claims were barred by the doctrine of res judicata. [R. 81, p. 9; R. 61-2].

Hazard Coal then filed suit in state court, and ARC promptly removed the matter to this Court. [R. 81, p. 10; R. 1-1]. In an Amended Complaint, Hazard Coal asserted the following claims: breach of the Lease, waste, abandonment, breach of the implied covenant of good faith and fair dealing, and a claim for injunctive relief. [R. 15]. With respect to Count I for breach of the Lease, Hazard Coal alleged that ARC breached the Lease by failing to pay the 2019 annual minimum royalties that became due on or about January 1, 2020. *Id.* at ¶ 23. ARC eventually filed a counterclaim for tortious interference. [R. 33]. After discovery, Hazard Coal filed a Motion for Summary Judgment, arguing, among other things, that the Bankruptcy Court did not properly approve the assignment of the Lease; any such assignment was a result of fraud upon the Bankruptcy Court; and the Lease was terminated by its own terms when ARC failed to pay the 2019 royalties. [R. 44].

Meanwhile, ARC sought clarification from the Bankruptcy Court by way of a "Motion for Declaration or (sic) Rights Regarding the Assumption and Assignment of the Hazard Coal Company Lease." [R. 81, p. 14; R. 58-2]. On January 22, 2021, the Bankruptcy Court entered an order (hereafter, the "Declarations Order") clarifying its January 3, 2020 Order, in which it had denied Hazard Coal's motion seeking reconsideration of the Sale Order. [R. 58-1]. That Declarations Order explained,

> The January 3 Order (i) confirms the Debtor's assumption of the Lease and assignment to American Resources Corporation; (ii) recognizes that transfer was authorized by the [Sale] Order approving the sale and substantially all the Debtors' assets entered on September 25, 2019; and (iii) ruled that Hazard Coal could not collaterally attack the assumption and assignment by arguing the Lease was terminated prepetition.

*Id.* at 1–3 (internal citations omitted). The Bankruptcy Court further explained that ARC had cured any alleged default stemming from the 2018 royalties, *id.* at 2, and it disposed of Hazard Coal's "fraud upon the court" arguments. *Id.* at 3.

This Court asked the parties to address the effect of the Bankruptcy Court's Declarations Order, and both parties agreed that the Declarations Order did not affect the specific question of whether the Lease terminated by its own terms *after* its assignment to ARC, as a result of ARC's failure to pay the 2019 royalties. [R. 81, pp. 15–16; R. 61; R. 62]. Meanwhile, with its Motion for Summary Judgment still pending in this Court, Hazard Coal appealed the Bankruptcy Court's Declarations Order. [R. 59]. Hazard Coal then filed in this Court a Motion for an Adjudication of the Lease Termination Issue in the Pending Motion for Summary Judgment and Supporting Memoranda and to Hold the Remaining Issues in Abeyance Pending the Outcome of the Related Appeal ("Motion for Adjudication and Stay"), [R. 65]. The Court ultimately granted this motion. *See* [R. 81, pp. 17–18].

On September 30, 2021, the Court entered its Memorandum Opinion and Order granting summary judgment in favor of Hazard Coal on the specific issue of whether ARC breached the lease at issue in this case by failing to pay certain annual minimum royalties, thereby resulting in termination of that lease. [R. 81]. As already noted, the Court addressed only this issue after granting Hazard Coal's Motion for Adjudication and Stay. [R. 65]. The Court therefore granted summary judgment on the lease termination issue *only* and stated that "[u]pon entry of this Memorandum Opinion and Order, all remaining matters in this case, including implementation of this Order, are **STAYED** pending resolution of Hazard Coal's appeal of the Bankruptcy Court's January 22, 2021 order." *Id.* at 37.

Defendants thereafter filed a Motion to Alter, Amend or Reconsider the Court's September 30, 2021 Memorandum Opinion and Order. [R. 82]. Before the Court ruled on that motion, Hazard Coal filed a motion seeking to clarify the status of certain hearing dates and deadlines. [R. 86]. In response, the Court entered an Order on January 19, 2022, clarifying that all pretrial dates and associated deadlines were continued generally. [R. 86]. The Court further clarified that "[a]ll remaining matters in this case, including implementation of the Order entered at [R. 81], will be **STAYED** pending resolution of the Plaintiff's bankruptcy appeal and Defendants' Motion to Alter, Amend, or Reconsider, [R. 82]." [R. 86, p. 2].

On September 9, 2022, Judge Karen Caldwell issued an order in the bankruptcy appeal case, affirming the Bankruptcy Court's Declarations Order. *Hazard Coal Corporation v. Cambrian Coal LLC*, No. 5:21-cv-40-KKC (E.D. Ky. Sept. 9, 2022), ECF No. 26. On the same day, this Court entered its order denying Defendants' Motion to Alter, Amend or Reconsider the Court's September 30, 2021 Memorandum Opinion and Order. [R. 99]. The Court also ordered the parties to "file a joint status report detailing what claims and counterclaims, if any, remain before this Court in light of this Order and Judge Caldwell's order in the related bankruptcy appeal, No. 5:21-cv-040-KKC, ECF No. 26." *Id.* at 17. On September 16, 2022, the parties filed their joint status report. [R. 100]. Soon after, on September 23, 2022, a motion for rehearing was filed in the bankruptcy appeal. Then, on October 5, 2022, a notice of appeal was filed in this case, appealing both the September 30, 2021 Memorandum Opinion and Order and the September 9, 2022 order denying the motion to reconsider. [R. 101].

Shortly thereafter, Hazard Coal filed a Motion to Dismiss with the Sixth Circuit. *See* [R. 108, p. 1]. Hazard Coal argued that the appeal must be dismissed for lack of jurisdiction and alternatively moved (i) to certify the appealed orders as final, (ii) to modify the stay entered by

this Court, (iii) to issue an injunction against ARC, and (iv) for leave to exceed page limits. *Id.* at 1. The Sixth Circuit agreed that it lacked jurisdiction, explaining that the appealed orders did not resolve all of the claims and were therefore not final and appealable. *Id.* at 2. Turning to Hazard Coal's alternative motions, the Sixth Circuit explained that (1) only the district court, not the appellate court, could decide to enter partial final judgment; (2) this Court's stay was not properly appealed and was therefore not reviewable; (3) the Sixth Circuit could not issue an injunction over ARC, as it lacked jurisdiction; and (4) the motion to exceed page limits was moot. *Id.* The Sixth Circuit therefore dismissed the appeal. *Id.*

Meanwhile, in the bankruptcy appeal, Hazard Coal filed a Petition for Writ of Mandamus with the Sixth Circuit, asking that Court to order Judge Caldwell "to complete the adjudication" of the bankruptcy appeal, or more specifically, to rule on the motion for rehearing. *See* No. 5:21-cv-040-KKC, ECF No. 32. On May 9, 2023, Judge Caldwell entered an order denying the motion for rehearing. *Id.* at ECF No. 33. The Sixth Circuit therefore denied the Petition for Writ of Mandamus as moot on June 15, 2023. *Id.* at ECF No. 36. Hazard Coal has now appealed Judge Caldwell's order denying the motion for rehearing and her earlier order affirming the Bankruptcy Court's Declarations Order. *Id.* at ECF No. 34. That appeal remains pending.

As previously noted, the Court's prior orders, [R. 81; R. 86], stayed all remaining issues in this case, including implementation of the Court's September 30, 2021 Memorandum Opinion and Order, pending resolution of Hazard Coal's appeal of the Bankruptcy Court's January 22, 2021 Order. *See* [R. 81, p. 37; R. 86, p. 2]. However, in its Motion to Certify, Hazard Coal has asked the Court to (1) certify its September 30, 2021 Memorandum Opinion and Order as final and appealable with no just reason for delay, thereby allowing an interlocutory appeal; (2) suspend and/or modify the stay imposed in that Memorandum Opinion and Order, such that the

lease termination ruling can be enforced; and (3) enter an injunction that removes ARC from the leased property. *See* [R. 103-1]. ARC has responded, asking the Court to deny each of Hazard Coal's requests, [R. 105], and Hazard Coal replied, [R. 106]. Hazard Coal also asks this Court for leave to exceed Local Rule 7.1(d)'s page limit. [R. 104].

The Court addresses each motion in turn.

## II.  ANALYSIS

### A.  Motion to Exceed Page Limit [R. 104]

As an initial matter, the Court will grant Hazard Coal's Motion to Exceed Page Limit. [R. 104]. Local Rule 7.1(d) limits motions and their accompanying memoranda to twenty-five pages or less. However, ARC did not voice an objection to Hazard Coal's request to exceed this page limit, nor specifically respond to it. *See* [R. 105]. The Court therefore considers this motion to be unopposed and will grant it.

However, for future filings, the Court directs Hazard Coal to Local Rule 5.2, which provides that "[a]ll pleadings, written motions, and other papers filed with the Court must be in size 8½ x 11 inch page format with margins of at least one inch on all sides, with text double spaced (except for appropriate block quotes, headings, and footnotes), in at least 12-point proportionately-spaced font." Hazard Coal's filings are in substantially larger font with larger margins, and these formatting errors (in addition to a one-page introductory paragraph, one-page "Introduction" section, three-and-one-half page "Summary" section, and twenty-three page "Background" section) have added significant length to Hazard Coal's briefing. In the future, Hazard Coal shall comply with the formatting requirements set forth in Local Rule 5.2 and shall make all reasonable efforts to comply with the page limit set forth in Local Rule 7.1(d).

### B.  Motion to Certify [R. 103]

#### 1.  Certification of Prior Order as Final and Appealable

Hazard Coal first asks the Court to certify its September 30, 2021 Memorandum Opinion and Order, [R. 81], as final and appealable, with no just reason for delay, citing Federal Rule of Civil Procedure 54(b). *See, e.g.*, [R. 103-1, p. 4]. That rule permits immediate review of certain district court orders that adjudicate fewer than all of the claims or liabilities at issue in the case. *See* Fed. R. Civ. P. 54(b). It provides,

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

*Id.* Thus, Rule 54(b) "relaxes the traditional finality requirement for appellate review." *Gen. Acquisition, Inc. v. GenCorp., Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994). However, "it does not tolerate immediate appeal of every action taken by a district court." *Id.* Instead, it is "specifically 'designed to facilitate entry of judgment on one or more claims, or as to one or more parties, in a multi-claim/multi-party action.'"[1] *Id.* (quoting *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 60 (6th Cir. 1986)).

To certify a ruling as final and appealable under Rule 54(b), the district court must first make two independent findings. *Id.* "First, the district court must expressly direct the entry of final judgment as to one or more, but fewer than all, claims or parties in a case and second, the

---

[1] The Court questions whether this is even a true multi-claim action for purposes of Rule 54(b), given that Hazard's claims for breach of the Lease, waste, and abandonment all arise out of a common factual background. *See Gen. Acquisition*, 23 F.3d at 1027–1030 (discussing Rule 54(b)'s multiple claims prerequisite and concluding that the case involved only one claim "because all of the causes of action arise out of a single aggregate of operate facts").

district court must expressly find that there is no just reason to delay appellate review." *Williams v. Kenton County, Ky*, No. 2:21-CV-080 (WOB-CJS), 2023 WL 2436047, at *1 (E.D. Ky. Mar. 9, 2023) (citing *Gen. Acquisition*, 23 F.3d at 1026). Ultimately, the district court "must clearly explain why it has concluded that immediate review of the challenged ruling is desirable." *Gen. Acquisition*, 23 F.3d at 1026 (citing *Solomon*, 782 F.2d at 61–62).

### a. Final Judgment

To satisfy the first step of the Rule 54(b) analysis, "the district court must expressly 'direct the entry of final judgment as to one or more but fewer than all the claims or parties' in a case." *Id.* (quoting Fed. R. Civ. P. 54(b)). As to what constitutes a "final judgment," the Supreme Court has explained that "[i]t must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)); *see also Gen. Acquisition*, 23 F.3d at 1026 (discussing *Curtiss-Wright*).

Importantly, however, the fact "[t]hat a judgment 'looks final' does not *make* it final and appealable, if the district judge plans to take up additional issues." *Kerr-McGee Chemical Corp. v. Lefton Iron & Metal Co.*, 570 F.3d 856, 857 (7th Cir. 2009) (citation omitted). Thus, "Rule 54(b) does not permit a district court to send issues of liability to the court of appeals while the amount of damages remains unresolved." *Id.* (citing *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737 (1976)); *see also Riley v. Kennedy*, 553 U.S. 406, 419 (2008) ("We have long held that an order resolving liability without addressing a plaintiff's requests for relief is not final." (citations omitted)). Stated another way, "[a] partial summary judgment which resolves one aspect of the question of liability but leaves the issue of damages in dispute is neither 'final' within the

meaning of 28 U.S.C. § 1291 nor certifiable under Rule 54(b)." *Rudd Const. Equipment Co., Inc. v. Home Ins. Co.*, 711 F.2d 54, 56 (6th Cir. 1983) (citing *Wetzel*, 424 U.S. at 744; *Acha v. Beame*, 570 F.2d 57, 62 (2nd Cir. 1978)); *see also Heartland Materials, Inc. v. Warren Paving, Inc.*, 5:16-CV-00146-TBR, 2018 WL 4035965, at *5 (W.D. Ky. Aug. 23, 2018) ("The determination of damages remains to be made, and therefore the Court's Order granting summary judgment to Plaintiffs on their first breach of contract claim is not a final and appealable judgment.").

In the present case, Hazard Coal has asserted claims for breach of the Lease, waste, abandonment, breach of the implied covenant of good faith and fair dealing, and a claim for injunctive relief. [R. 15]. Count I of the Amended Complaint alleges multiple breaches of the Lease,

> including but not limited to failure to make payments required under the Lease, failure to conduct their mining operations in a proper and skillful manner, failure to comply with applicable laws and regulations, failure to develop the Coal Properties, and failure to comply with other non-monetary provisions of the Lease.

*See id.* ¶ 36. For these various alleged breaches, Hazard Coal seeks "all remedies pursuant to the Lease . . . including but not limited to the termination and forfeiture of the Lease, an award of *compensatory damages* in excess of the minimum jurisdictional limits of this Court, and further preliminary and permanent injunctive relief." *Id.* ¶ 40 (emphasis added). Thus, in Count I of its Amended Complaint, Plaintiff asserts a claim for multiple breaches of the lease and seeks multiple forms of relief, including damages.

But the Court's September 30, 2021 Memorandum Opinion and Order resolved only the specific issue of whether ARC breached the Lease by failing to pay the 2019 annual minimum royalties, thereby resulting in termination of that lease. *See* [R. 81]. That is, the Court resolved the liability issue only. The Court did *not* address other alleged breaches of the lease or any other

issues of liability, nor did it address damages or the counterclaim. In fact, Hazard Coal did not even raise these issues in its Motion for Adjudication and Stay, nor did ARC in its response. [R. 65; R. 66]. Simply put, the issue of damages was not before the Court when it ruled on Hazard's Motion for Adjudication and Stay.

As a result, the issue of whether Hazard Coal is entitled to damages or injunctive relief for ARC's breach (resulting from the failure to pay the 2019 royalties) remains unresolved. And in fact, Hazard Coal readily admits that damages for breach of the lease have not yet been determined. *See* [R. 103-1, p. 36 ("The Opinion did not adjudicate damages . . . .")]; *id.* at 32, 38 (acknowledging that the parties seek damages in the Amended Complaint and counterclaim and those issues are not yet resolved). Yet, Hazard Coal completely failed to address the clear Supreme Court and Sixth Circuit case law that forecloses its request for certification under such circumstances. *See Rudd*, 711 F.2d at 56 (citing *Wetzel*, 424 U.S. at 744).

As previously explained, "Rule 54(b) does not permit a district court to send issues of liability to the court of appeals while the amount of damages remains unresolved." *Kerr-McGee Chemical Corp.*, 570 F.3d at 857 (citation omitted); *see also Rudd*, 711 F.2d at 56; *Heartland Materials*, 2018 WL 4035965, at *5. One thing is clear, then: there is no final judgment. The Court therefore finds that its September 30, 2021 Memorandum Opinion and Order, [R. 81], is not a final judgment for purposes of Rule 54(b).

### b. No Just Reason for Delay

Even if the Court's September 30, 2021 Memorandum Opinion and Order, [R. 81], qualifies as a final judgment (it does not), the Court must still "'express[ly] determin[e] that there is no just reason' to delay appellate review." *Gen. Acquisition*, 23 F.3d at 1026 (citations omitted). Importantly, "[n]ot all final judgments on individual claims should be immediately

- 11 -

appealable, even if they are in some sense separable from the remaining unresolved claims." *Id.* at 1027 (quoting *Curtiss–Wright*, 446 U.S. at 8) (internal quotation marks omitted). Instead, to determine whether a final judgment should be subject to an immediate appeal, the district court must "balance the needs of the parties against the interests of efficient case management." *Id.*

The Sixth Circuit has articulated the following non-exhaustive list of factors to aid district courts in this analysis:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*Id.* at 1030 (quoting *Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.*, 807 F.2d 1279, 1283 (6th Cir. 1986)); *see also Rowland v. Southern Health Partners, Inc.*, 4 F.4th 422, 427 (6th Cir. 2021).

This second finding is ultimately reviewable for abuse of discretion. The discretionary judgment of the district court should be afforded "substantial deference, for that court is 'the one most likely to be familiar with the case and with any justifiable reasons for delay.'" *Curtiss–Wright*, 446 U.S at 10 (quoting *Mackey*, 351 U.S. at 437). Nevertheless, "the district court's discretion is not unbounded." *Gen. Acquisition*, 23 F.3d at 1030 (quoting *Corrosioneering*, 807 F.2d at 1282). The district court must adequately explain its reasoning and must "weigh and examine the competing factors involved in the certificat[ion] decision." *Id.* (quoting *Solomon*, 782 F.2d at 61–62).

With this standard in mind, the Court turns to the non-exhaustive list of factors outlined above. Here, there is clearly a relationship between the adjudicated lease violation issue and the

unadjudicated claims (and counterclaim), and the relief sought. For example, Hazard Coal broadly seeks both monetary damages and injunctive relief on all alleged breaches of the Lease (Count I), but it also seeks damages and injunctive relief for its claims of waste of the leasehold property (Count II) and abandonment of the property (Count III). [R. 15, pp. 9–12]. All of these issues are intertwined with ARC's assignment of the Lease and the rights it acquired with respect to the leasehold, its roads, buildings, improvements, and so on, as discussed in more detail below. *See, e.g.*, [R. 44-2, p. 7, ¶ 2(c); p. 21, ¶ 16 (The Lease)]; *see also infra* Section II(B)(2). In other words, the unadjudicated claims and the related issue of damages all relate to ARC's assumption of and rights under the Lease, ARC's actions post-assumption, and when its rights terminated and under what circumstances. Against these various claims, ARC seeks damages on its counterclaim for tortious interference. [R. 33]. Thus, any final damages award in this case involving the already-adjudicated lease termination issue could be affected by the Court's ruling on these other pending claims and ARC's counterclaim. Clearly, then, there is a relationship between the adjudicated and unadjudicated claims in this case. The first factor therefore weighs in favor of denying certification.

The second, third, and fourth factors also weigh in favor of denying the request for certification. Regarding the second factor, while it is unclear whether the need for review might by mooted by future developments in this Court, it is clear that the issues of damages, waste, and abandonment are intertwined and involve allegations that ARC breached the Lease even earlier than the spring of 2020.[2] Accordingly, as to the third factor (the possibility that the reviewing

---

[2] Though not a consideration in its ruling, the Court observes that the need for review could be mooted in the event the Sixth Circuit rules in favor of Hazard Coal on its pending appeal from Judge Caldwell's bankruptcy appeal orders. For example, if the Sixth Circuit agrees with Hazard Coal that the Lease was never properly assigned to ARC, the narrow question of whether ARC breached the lease by failing to pay the 2019 royalties would effectively be moot.

court might be forced to consider the same issue a second time), any ruling by this Court on the remaining claims (like waste and abandonment), the pending counterclaim, and damages, if appealed, could force the Sixth Circuit to reevaluate various factual matters and issues bound up and related to the lease termination issue. Lastly, the fourth factor (the presence of claims or counterclaims that could result in set-off) is also implicated. True, there is currently no judgment (i.e., award of damages) that could be set-off by other claims or counterclaims. But for all the reasons already stated, the remaining claims and counterclaim could certainly affect the total damages award in this case. The Court therefore finds that the second, third, and fourth factors listed above also weigh in favor of declining certification.

Other miscellaneous factors are also at play. This case was removed to this Court on January 17, 2020. [R. 1]. The case has lingered through various motions and a stay resulting from Hazard Coal's continued litigation of the Bankruptcy Court orders in the district court. ARC also prematurely appealed this Court's ruling on the lease termination issue. *See* [R. 108]. Allowing a piecemeal appeal of the Court's prior orders only adds to the delay in reaching a final resolution in this case, when other significant issues, such as damages, remain. Further, given the litigious nature of the parties, and the fractured nature of the litigation, it is not clear that certification of this narrow issue will speed matters along. The Court therefore finds that these miscellaneous factors also weigh against certification.

In sum, the Court finds that its September 30, 2021 Memorandum Opinion and Order, [R. 81], is not a final judgment for purposes of Rule 54(b) due to the remaining unresolved damages issue. Further, given the circumstances of this case—including the related and unresolved claims and counterclaim—the Court cannot find that there is no just cause for delay.

- 14 -

As such, certification under Rule 54(b) is not appropriate.[3] In reaching this conclusion, the Court is mindful of the Sixth Circuit's directive that interlocutory appeals under Rule 54(b) should be limited "to 'infrequent harsh case[s].'" *Gen. Acquisition*, 23 F.3d at 1027 (quoting *Rudd Construction Equip. Co., Inc. v. Home Insurance Co.*, 711 F.2d 54, 56 (6th Cir. 1983)). As the Sixth Circuit has explained, limiting such interlocutory appeals "alleviate[s] hardship resulting from unnecessary delay without undermining 'the historic federal policy against piecemeal appeals.'" *Id.* (quoting *Curtiss-Wright*, 446 U.S. at 8). Here, for the reasons stated above, the Court finds that this is not one of the "infrequent harsh case[s]" that merits certification under Rule 54(b), and it will deny Hazard Coal's Motion to Certify on that issue.

### 2.  Modification of Stay

Hazard Coal next asks that the Court's stay of its September 30, 2021 Memorandum Opinion and Order "be suspended or dissolved" so that Hazard Coal may "exercise its lease termination rights." [R. 103-1, pp. 5, 38–39]. In that opinion, the Court expressly held that, "[u]pon entry of this Memorandum Opinion and Order, all remaining matters in this case, including implementation of this Order, are **STAYED** pending resolution of Hazard Coal's appeal of the Bankruptcy Court's January 22, 2021 order." [R. 81, p. 37].

Judge Caldwell affirmed the Bankruptcy Court's January 22, 2021 Declarations Order on September 9, 2022. On September 23, 2022, nearly a year after this Court imposed its stay, Hazard Coal complained to Judge Caldwell (in the bankruptcy appeal) that the imposed stay (in this case) exceeded the scope of its initial request. *See* 5:21-cv-040-KKC, ECF No. 28, p. 14 (Motion for Rehearing). However, neither party made any request to *this Court* to lift or modify

---

[3] This analysis applies with equal force to the Court's September 9, 2022 Order Denying ARC's Motion to Reconsider, [R. 99].

the stay until Hazard Coal filed the present motion on February 7, 2023. [R. 103]. Meanwhile, Hazard Coal continued to litigate the bankruptcy issues with its Motion for Rehearing, which was just recently resolved. *See* No. 5:21-cv-040-KKC, ECF Nos. 28, 33. Hazard Coal has appealed that ruling to the Sixth Circuit. *Id.* at ECF No. 34. Now, Hazard Coal asks this Court to lift or modify the stay but cites to no authority in support of this request. *See* [R. 103-1, p. 38]. In its one-page argument, Hazard Coal seems to rely entirely on the equities of the situation, arguing that "[i]t is inequitable for ARC to remain in possession and control of Hazard Coal's Property more then thirty two (sic) (32) months after their rights under the Lease terminated due to payment default." *Id.*

In response, ARC argues that the stay should remain in effect because "moving forward with this case with the Bankruptcy Appeal is unresolved, could expose the Liquidating Trustee to reclamation liability." [R. 105, p. 5]. More specifically, ARC explains that, as part of the sales process in the bankruptcy proceeding, the defendants "agreed to be bound by the Permit Operating Agreement which requires the Defendants to perform reclamation of the sites, as required by Kentucky law." *Id.* ARC insists that these reclamation obligations will still exit, even if the mining permits cannot be transferred to Defendants. *Id.* But like Hazard Coal, ARC fails to cite to any law or evidence in support of its position.

In considering these arguments, the Court is mindful of its "inherent power 'to process litigation to a just and equitable conclusion.'" *Commonwealth v. United States*, 5:12-CV-00132-TBR, 2015 WL 7313422, *2 (W.D. Ky. Nov. 19, 2015) (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)). To that end, the Court may stay its own orders. *Id.* (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). In considering whether a stay is warranted, the Court "must 'weigh competing interests and maintain an even balance.'" *Id.* (quoting *Landis*

*v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Ultimately, the Court has broad discretion to impose or

lift a stay. *See Clinton*, 520 U.S. at 706–07 ("The District Court has broad discretion to stay

proceedings as incident to its power to control its own docket." (citation omitted));

*Commonwealth*, 2015 WL 7313422, at *2 (applying this same standard when considering a

motion to lift a stay).

The Court previously exercised its discretion to enter a stay in this case, as explained

above. Indeed, at least with respect to the remaining claims and counterclaims, the *parties*

requested a stay. [R. 65, p. 8–9 (requesting that all remaining issues be stayed pending resolution

of the bankruptcy appeal)]; [R. 66, p. 2 (responding with no objection to the requested stay).

Thus, the Court's September 30, 2021 Memorandum Opinion and Order stated that "all

remaining matters in this case, including implementation of this Order, are **STAYED** pending

resolution of Hazard Coal's appeal of the Bankruptcy Court's January 22, 2021 order." [R. 81,

p. 37]. In response to ARC's Motion to Alter, Amend or Reconsider, [R. 82], and a motion

seeking clarification of certain hearing dates and deadlines, [R. 86], the Court later clarified that

"[a]ll remaining matters in this case, including implementation of the Order entered at [R. 81],

will be **STAYED** pending resolution of the Plaintiff's bankruptcy appeal and Defendants'

Motion to Alter, Amend, or Reconsider,[4] [R. 82]." [R. 86, p. 2].

In seeking to modify or lift this stay, Hazard Coal repeatedly emphasizes that both it and

ARC "agreed that the [Bankruptcy Court's] Declarations Order did not affect the termination of

the Lease." [R. 103-1, p. 17]; *see also id.* at 16. However, the parties ignore that Judge

Caldwell's ruling in the bankruptcy appeal could potentially impact damages and other issues in

the present case. For example, in the bankruptcy appeal, Hazard Coal asked the district court to

---

[4] As noted above, the Motion to Alter, Amend, or Reconsider was resolved in this Court's September 9, 2022 Order, [R. 99].

review the Bankruptcy Court's January 22, 2021 Declarations Order, in which the Bankruptcy Court confirmed its earlier ruling that the assignment of the Lease to ARC was proper and the transfer had been completed via the Sale Order. [R. 58-1, pp. 1–3]. Thus, Hazard Coal challenged ARC's assignment of the Lease from the start in the bankruptcy court. Determination of this issue likely impacts damages under the Lease—that is, whether ARC lawfully acquired the leasehold at all will affect damages in this case. For example, under the Bankruptcy Court's Sale Order, ARC purchased certain assets and rights, including certain buildings, structures, facilities, and leasehold improvements. [R. 36-6, p. 48[5] (Asset Purchase Agreement, Exhibit A to Sale Order, ¶ 2.1(b)(i)–(iii)]. So, whether ARC lawfully assumed the Lease may directly impact damages in this case related to rights to improvements and other matters. *See id.*; *see also* [R. 44-2, p. 21, ¶ 16 (permitting ARC to remove certain leasehold improvements upon termination of the Lease). The Lease, in turn, grants the lessee (here, ARC) the right to "construct, operate, use and maintain upon the surface of the Coal Properties. . . roads; tipples; washing, processing and/or cleaning plants; buildings" and so on. [R. 44-2, p. 7, ¶ 2(c)]. The Lease further states that, upon termination of the Lease, the lessee (ARC) "shall have the right to enter upon the property . . . and to remove therefrom all equipment, machinery, supplies, tracks, structures, tipples, cleaning plants, washing plants, tanks and other items of personalty and all fixtures owned by Lessee," assuming that "all sums due and owing to Lessor under the terms [of the Lease] have been paid."[6] *Id.* at 21, ¶ 16. But if the Lease had not been properly assigned (as

---

[5] This indicates the page number assigned by the Court's electronic docketing system.

[6] Quoting to this provision, Hazard argues that "ARC has no right under the Lease and no rights to remove any fixtures" because "the Lease terminated because ARC failed to pay sums due under the Lease." [R. 106, p. 8 n.6]. But again, this Court's September 30, 2021 Memorandum Opinion and Order, [R. 81], considered only whether ARC breached the lease by failing to pay the 2019 royalties, which became due in 2020. The Court did not decide whether and to what extent ARC had certain rights under the Lease prior to that breach, whether ARC breached the Lease prior to 2020, or whether ARC removed any improvements prior to the 2020 termination and if so, whether it

Hazard Coal urged in its bankruptcy appeal), then ARC would not have acquired any of these rights, nor would it have the right to remove personalty and fixtures upon termination of the Lease. These rights under the Lease, in addition to questions of when the Lease terminated due to breach and what, if any, improvements were removed and when (pre-breach or post-breach), all potentially impact the claims in this case, which involve accusations of abandonment, waste, and "physical damage to [the leasehold's] works and infrastructure." *See, e.g.*, [R. 15, ¶ 30]. Simply put, then, the issues raised in the bankruptcy appeal—namely, whether the Bankruptcy Court correctly ruled that the Lease had been properly assigned to ARC—potentially impacted issues and damages in this case.

However, Hazard Coal's bankruptcy appeal has recently been resolved at the district court level. In other words, Judge Caldwell's orders adjudicated the merits of the bankruptcy appeal. The Court will therefore exercise its discretion to lift the stay. In doing so, the Court acknowledges that Hazard Coal has now appealed Judge Caldwell's order denying the motion for rehearing and her earlier order affirming the Bankruptcy Court's Declarations Order. *See* No. 5:21-cv-40-KKC (E.D. Ky. Sept. 9, 2022), ECF No. 34. That appeal remains pending. In the meantime, this Court will exercise its broad discretion to lift the stay so that the remaining claims may be addressed. Should those matters become ripe for decision before the Sixth Circuit rules on Hazard Coal's appeal, the Court may request additional authority and argument from the parties concerning the propriety of any future stay pending resolution of that appeal.

### 3.  Injunctive Relief

Finally, Hazard Coal asks this Court for an injunction to "remove ARC from Hazard Coal's Property." [R. 103-1, p. 6]. However, Hazard Coal fails to cite any law or authority for

---

was permitted to do so under the Lease. These issues remain unresolved and have a potential impact on total damages.

support and fails to cite the appropriate standard for injunctive relief.[7] *See id.* at 40. In fact, Hazard Coal spends no more than five sentences (a single paragraph) on this issue. *Id.* The Court therefore finds that this argument is wholly undeveloped, and the Court need not consider it. *See Brown v. Astrue*, No. 09-387-HRW, 2010 WL 4878866, *3 (E.D. Ky. Nov. 24, 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). Accordingly, to the extent the Motion to Certify seeks injunctive relief, the motion will be denied without prejudice.

## III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1. Hazard Coal's Motion to Exceed Page Limit, [**R. 104**], is **GRANTED**.

2. Hazard Coal's Motion to Certify, [**R. 103**], is **GRANTED IN PART** and **DENIED IN PART**.

   a. The motion is **DENIED** to the extent Hazard Coals asks this Court to certify its September 30, 2021 Memorandum Opinion and Order, [R. 81], and its September 9, 2022 Order Denying Motion for Reconsideration, [R. 99], as final and appealable under Rule 54(b).

   b. The motion is **GRANTED** to the extent Hazard Coal asks this Court to lift the stay imposed by the Court in its September 30, 2021 Memorandum Opinion and Order, [R. 81]. That stay is hereby **LIFTED**.

---

[7] In a section of its Motion to Certify titled "Applicable Federal Rules of Procedure," Hazard Coal cites to Rule 62(d), which permits the district court to issue an injunction pending appeal. [R. 103-1, p. 27]; *see also* Fed. R. Civ. P. 62(d). Again, Hazard Coal does not expand on the standard for issuing such an injunction, and regardless, the appeal in this case is no longer pending and relief under Rule 62(d) would therefore be inappropriate.

      c.   The motion is **DENIED WITHOUT PREJUDICE** to the extent Hazard seeks injunctive relief.

3. An in-person status conference is **SCHEDULED** for **October 31, 2023 at the hour of 2:30 p.m.** before the Honorable Claria Horn Boom, United States District Judge, at the United States Courthouse in **London, Kentucky**.

4. On or before **October 17, 2023**, the parties **SHALL** file a joint status report addressing what claims, counterclaims, or other issues remain pending before this Court; detailing the parties' proposed next steps and plan for final resolution of all remaining issues; and providing a proposed briefing schedule for resolution of those remaining issues. The parties **SHALL** also advise the Court of the status of any efforts to settle this litigation and whether a settlement conference or mediation might be fruitful.

This the 27th day of September, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

- 21 -