.UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| HAZARD COAL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:20-CV-010-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| AMERICAN RESOURCES ) | **AND ORDER** |
| CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Motion for Summary Judgment on Defendant's Counterclaim filed by Plaintiff Hazard Coal Corporation ("Hazard Coal"). [R. 113]. Defendants American Resources Corporation and Perry County Resources, LLC (collectively, "ARC") filed a response, [R. 114], and Hazard Coal replied. [R. 115]. This matter is therefore fully briefed and ripe for review. For the reasons set forth below, the Court will grant Hazard Coal's motion.

I. **BACKGROUND**

The Court provided a thorough recitation of the facts of this case in its September 30, 2021 Memorandum Opinion and Order, [R. 81], and it provided another detailed summary of those facts in its September 27, 2023 Memorandum Opinion and Order. [R. 110]. Here, the Court provides only a brief summary of the relevant procedural and factual background.

In 1981, Hazard Coal entered into an agreement ("the Lease") by which it leased certain coal property and coal seams to Whitaker Coal Corporation. [R. 81, p. 2; R. 44-2]. Perry County Coal, LLC ("Perry County Coal") eventually assumed Whitaker Coal Corporation's interest in the Lease. [R. 81, p. 2; R. 44-3, ¶ 4; R. 44-2, pp. 6–9]. In 2019, Perry County Coal's parent

- 1 -

company petitioned for bankruptcy. [R. 81, p. 5; R. 61-2, p. 2]. Through the bankruptcy proceeding, Perry County Coal's assets, including its interest in the Lease, were sold to ARC. [R. 81, p. 6; R. 44-8, p. 1]. The Bankruptcy Court entered a Sale Order approving of the sale of the debtors' assets and the assumption and assignment of the debtors' contracts, including the Lease. [R. 81, p. 7; R. 36-6; R. 36-7].

Hazard Coal then made several challenges to the Sale Order in different forums. [R. 81, p. 8]. Among other things, Hazard Coal sought a declaratory judgment from the Bankruptcy Court that the Lease terminated prior to the filing of the bankruptcy petitions because Perry County Coal had failed to pay the 2018 royalties due under the Lease, and the Lease was therefore not a part of the bankruptcy estate. *Id.*; [R. 61-2, p. 2]. Hazard Coal also asked the Bankruptcy Court to reconsider its Sale Order. [R. 81, p. 8; R. 61-2, p. 2]. On January 3, 2020, the Bankruptcy Court entered an order that denied Hazard Coal's motion for reconsideration and explained that the Lease was properly included in the bankruptcy estate and Hazard Coal's claims were barred by the doctrine of res judicata. [R. 81, p. 9; R. 61-2].

Hazard Coal then filed suit in state court, and ARC promptly removed the matter to this Court. [R. 81, p. 10; R. 1-1]. In an Amended Complaint, Hazard Coal asserted the following claims: breach of the Lease, waste, abandonment, breach of the implied covenant of good faith and fair dealing, and a claim for injunctive relief. [R. 15]. With respect to Count I for breach of the Lease, Hazard Coal alleged that ARC breached the Lease by failing to pay the 2019 annual minimum royalties that became due on or about January 1, 2020. *Id.* at ¶ 23.

On June 30, 2020, ARC filed a counterclaim for tortious interference.[1] [R. 33]. ARC alleges that certain "officers, directors, and/or authorized agents" of Hazard Coal "have taken

---

[1] While ARC's counterclaim does not list out individual counts or state specific causes of action, it appears to be a single-count counterclaim for tortious interference with business relationships. *See* [R. 33]. The parties and the

actions . . . on behalf of [Hazard Coal] and in furtherance of [Hazard Coal's] business agenda which have caused . . . damages to" ARC. *Id.* ¶ 4. More specifically, ARC alleges that these individuals have "continually come onto the lease property without prior notice to ARC" to interfere with ARC's "attempts to re-start the mining operations at the site." *Id.* ¶ 10. For example, on at least one occasion, the Hazard Coal representatives ordered ARC's representatives to vacate the leased property. *Id.* ¶ 11. On other occasions, they "have come onto the property with a representative of the Kentucky Division of Mine Safety," who is allegedly a close relative of one of the Hazard Coal representatives, and have "caused various violations and 'red tags' to be issued by the Kentucky Division of Mine Safety," thereby "hindering and stopping the efforts of ARC . . . to re-start the mining operation." *Id.* ¶ 12. ARC also alleges that one of the Hazard Coal representatives contacted one of ARC's potential investors "and advised him that he should not invest with ARC . . . because the [] Lease was not valid and ARC . . . did not have rights to the property." *Id.* ¶ 13. That same Hazard Coal representative allegedly told the investor that Hazard Coal would lease the property to the investor so long as the investor did not enter into a business relationship with ARC. *Id.* ¶ 14. Lastly, ARC alleges that Hazard Coal's "baseless and frivolous claim" that the Lease was terminated prior to the filing of the bankruptcy proceeding has caused "several potential investors [to walk] away from deals being discussed with ARC." *Id.* ¶ 15. ARC alleges that these actions "reflect a conspiracy by [Hazard Coal] and the referenced individuals acting on behalf of [Hazard Coal], to tortiously interfere with the business of ARC . . . and tortiously interfere" with its business relationships, resulting in over $5,000,000 in damages. *Id.* ¶¶ 17, 19.

---

Court have proceeded under this understanding, and ARC has not disputed that it raises a single-count counterclaim for tortious interference with business relationships.

In addition to filing this counterclaim, ARC also sought clarification from the Bankruptcy Court. [R. 81, p. 14; R. 58-2]. On January 22, 2021, the Bankruptcy Court entered an order (hereafter, the "Declarations Order") clarifying its January 3, 2020 Order, in which it had denied Hazard Coal's motion seeking reconsideration of the Sale Order. [R. 58-1]. Among other things, the Declarations Order explained,

> The January 3 Order (i) confirms the Debtor's assumption of the Lease and assignment to American Resources Corporation; (ii) recognizes that transfer was authorized by the [Sale] Order approving the sale and substantially all the Debtors' assets entered on September 25, 2019; and (iii) ruled that Hazard Coal could not collaterally attack the assumption and assignment by arguing the Lease was terminated prepetition.

*Id.* at 1–3 (internal citations omitted). Hazard Coal appealed this Declarations Order. [R. 59].

Meanwhile, after the close of discovery in this Court,[2] Hazard Coal filed a Motion for Summary Judgment, arguing, among other things, that the Lease was terminated by its own terms when ARC failed to pay the 2019 royalties. [R. 44]. The parties agreed that the Declarations Order did not affect this specific question. [R. 81, pp. 15–16; R. 61; R. 62]. Hazard asked the Court to adjudicate that issue and hold all the remaining issues in abeyance pending its appeal of the Declarations Order. [R. 65]. The Court granted that request. *See* [R. 81, pp. 17–18].

On September 30, 2021, the Court entered its Memorandum Opinion and Order granting summary judgment in favor of Hazard Coal on the specific issue of whether ARC breached the lease at issue in this case by failing to pay certain annual minimum royalties, thereby resulting in termination of that lease. [R. 81]. The Court also stated that "[u]pon entry of this Memorandum Opinion and Order, all remaining matters in this case, including implementation of this Order, are **STAYED** pending resolution of Hazard Coal's appeal of the Bankruptcy Court's January 22,

---

[2] Pursuant to the Court's Scheduling Order, fact discovery closed on August 31, 2020. *See* [R. 19].

2021 order." *Id.* at 37. Defendants thereafter filed a Motion to Alter, Amend or Reconsider the Court's September 30, 2021 Memorandum Opinion and Order. [R. 82].

On September 9, 2022, Judge Karen Caldwell issued an order in the bankruptcy appeal case, affirming the Bankruptcy Court's Declarations Order. *Hazard Coal Corporation v. Cambrian Coal LLC*, No. 5:21-cv-40-KKC (E.D. Ky. Sept. 9, 2022), ECF No. 26. On the same day, this Court entered its order denying Defendants' Motion to Alter, Amend or Reconsider. [R. 99]. Shortly thereafter a motion for rehearing was filed in the bankruptcy appeal, and a notice of appeal was filed in this case, appealing both the September 30, 2021 Memorandum Opinion and Order and the September 9, 2022 order denying the motion to reconsider. [R. 101]. The appeal was ultimately dismissed for lack of jurisdiction, [R. 108], and the motion for rehearing was denied. *See* No. 5:21-cv-040-KKC, ECF No. 33. Hazard Coal has now appealed Judge Caldwell's order denying the motion for rehearing and her earlier order affirming the Bankruptcy Court's Declarations Order. *Id.* at ECF No. 34. That appeal remains pending.

Meanwhile, this Court addressed a motion by Hazard Coal to certify the September 30, 2021 Memorandum Opinion and Order as final and appealable, thereby permitting an interlocutory appeal, lift the stay, and enter an injunction against ARC. [R. 103-1]. On September 27, 2023, the Court denied the request to certify its September 30, 2021 ruling, granted the request to lift the stay, and denied the motion for injunctive relief. [R. 110]. The Court also ordered the parties to provide a joint status report addressing, among other things, any and all remaining claims, counterclaims, or other issues that remained pending. *Id.* at 21. After a follow-up status conference on October 31, 2023, the Court allowed Hazard Coal time to file a renewed motion for summary judgment on ARC's counterclaim. [R. 112 (Minutes from Status Conference)]; *see also* [R. 117 (Transcript)].

Hazard Coal has now filed its motion seeking summary judgment on ARC's counterclaim. [R. 113]. As noted previously, that motion is now fully briefed and ripe for review. [R. 114 (Response)]; [R. 115 (Reply)].

## II.   LEGAL STANDARD[3]

As an initial matter, the Court notes that Hazard Coal has styled its motion as one for summary judgment, yet it also appears to argue for application of the Federal Rule of Civil Procedure 12(b) standard applicable to motions to dismiss. *See, e.g.*, [R. 113-1, p. 8 (citing *Smith v. Westlake Vinyls, Inc.*, 403 F.Supp.3d 625, 630 (W.D. Ky. 2019))]. Nevertheless, the Court understands that Hazard Coal intended to file a motion seeking summary judgment under Federal Rule of Civil Procedure 56. Moreover, to the extent Hazard Coal relies on facts outside the pleadings, this motion *must* be considered as a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Under Rule 56, a court may grant summary judgment if it first finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Winkler v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[3] While Hazard Coal spends several pages of its reply brief arguing that the federal summary judgment standard applies, apparently in response to ARC's citation to *Steelvest, Inc. v. Scansteel Service Center., Inc.*, 807 S.W.2d 476 (Ky. 1991), it is clear to this Court that Federal Rule of Civil Procedure 56 provides the applicable standard for summary judgment motions.

The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson*, 477 U.S. at 256. Once the moving party satisfies this burden, the non-moving party thereafter must produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

### III.   ANALYSIS

Hazard Coal's arguments can be divided into two categories. In the first, Hazard Coal seeks dismissal of the counterclaim on procedural grounds. In the second category, Hazard Coal asserts various substantive arguments for summary judgment on the counterclaim. The Court addresses each procedural and substantive argument in turn.

#### A.  Procedural Arguments

Hazard Coal first argues that ARC's counterclaim, [R. 33], must be dismissed as procedurally improper. *See* [R. 113-1, pp. 9–11]. More specifically, Hazard Coal argues that ARC was required to seek leave of Court before filing the counterclaim, *id.* at 9–10, and

alternatively, the counterclaim is a compulsory counterclaim that should have been raised in ARC's Answer. *Id.* at 10–11. The Court first considers whether the counterclaim is compulsory, then considers whether it was properly and timely filed.

### 1. Compulsory Counterclaim

Federal Rule of Civil Procedure 13(a) addresses compulsory counterclaims. That rule provides that, subject to certain exceptions not relevant here,

> (1) A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a)(1)(A)–(B). When considering whether a counterclaim "arises out of the same transaction or occurrence," courts "look[] to whether there is a 'a logical relationship between the two claims.'" *Peach v. Hagerman*, 4:22-cv-000133-RGJ, 2024 WL 1748443, *4 (W.D. Ky. Apr. 23, 2024) (quoting *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1101 (6th Cir. 2015)). "Under this test, [courts] determine whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Id.* (quoting *Bauman*, 808 F.3d at 1101) (internal quotation marks omitted).

In the present case, Hazard argues that ARC was required to asserts its counterclaim in its Answer because "issues of law and fact pertaining to the breach and termination of the Lease and the fact that [ARC was] permit blocked and incapable of conducting mining operations for the premises directly support Hazard Coal's claims and refute [ARC's] counterclaims." [R. 113-1, p. 11]. In response, ARC argues that, pursuant to the Court's Scheduling Order, [R. 19], it was permitted to amend its pleadings. [R. 114, pp. 4–5]. Moreover, ARC argues, some of the allegations giving rise to the counterclaim did not occur until after ARC filed its Answer to

Hazard Coal's Amended Complaint, and "there is no real relationship between the claims made in [Hazard Coal's] complaint dealing with a breach of a lease and the counterclaim which deals with tortious conduct by representatives of [Hazard Coal]." *Id.* at 5.

Beyond these conclusory statements, neither party expands upon their arguments, nor cites to any factually relevant case law, nor engages in a Rule 13 analysis. Neither party bothers to discuss the specific facts alleged in Hazard Coal's Amended Complaint, [R. 15], or ARC's counterclaim. Indeed, in its reply brief, Hazard Coal merely restates its above-quoted argument, without further elaboration. [R. 115, p. 12]. Given the parties' failure to engage with the law or the facts relevant to Hazard Coal's compulsory counterclaim argument, the Court finds that this argument is undeveloped, and the Court need not consider it. *See Members Heritage Credit Union v. New York Marine & Gen. Ins. Co.*, 5:21-CV-207-CHB, 2023 WL 4876383, *13 (E.D. Ky. July 31, 2023) (explaining that the party's argument "is wholly undeveloped, and the Court need not consider it); *Brown v. Astrue*, No. 09-387-HRW, 2010 WL 4878866, *3 (E.D. Ky. Nov. 24, 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

Moreover, while it is true that if a party fails to plead a compulsory counterclaim, that party is "forever [barred] . . . from raising the claim *in another action*," *Bauman*, 808 F.3d at 1101 (quoting *Sanders v. First Nat'l Bank & Trust Co. in Great* Bend, 936 F.2d 273, 277 (6th Cir. 1991)) (internal quotation marks omitted) (emphasis added), Hazard Coal does not cite any authority suggesting that a party is barred from amending its answer to assert a compulsory counterclaim that could otherwise have been asserted in its original answer *in that same action*.

Indeed, "[t]here seems to be some confusion" among district courts "as to whether a defendant who fails to raise a counterclaim in his answer is barred from asserting that claim for all time (i.e., in that litigation) or only in subsequent litigation." *Dixie Fuel Co., LLC v. Straight Creek, LLC*, 08-326-GFVT, 2011 WL 845828, *3 (E.D. Ky. Mar. 8, 2011) (citations omitted). This Court, however, has previously held "that a compulsory counterclaim not raised in an answer cannot be raised in subsequent litigation but may be filed (is not waived) in the instant litigation with the Court's permission." *Id.* Thus, this Court need not decide whether the counterclaim is compulsory, but need instead only consider whether it was otherwise properly filed.

### 2. Failure to Seek Leave of Court

The Court next considers whether ARC's counterclaim, whether compulsory or not, was otherwise timely and properly asserted. To do so, the Court finds it helpful to first briefly discuss the relevant timeline.

Hazard Coal filed its Amended Complaint on February 5, 2020. [R. 15]. ARC filed its Answer on February 24, 2020, but it did not assert any counterclaims. [R. 17]. Shortly thereafter, on March 6, 2020, the Court entered a Scheduling Order, outlining deadlines for fact discovery, the filing of dispositive motions, and so on. [R. 19]. Relevant here, the Scheduling Order provided that "[a]ny motions to join additional parties or amend pleadings shall be filed" by Hazard Coal no later than May 31, 2020, and by ARC no later than June 30, 2020. *Id.* ¶ 1(d). On June 5, 2020, United States Magistrate Judge Hanly A. Ingram conducted a telephonic conference with the parties and counsel. [R. 30 (Minutes)]. During the call, counsel for ARC "advised that they will be filing an Amended Answer and Counterclaim which may require an

extension of the deadlines."[4] *Id.* On June 30, 2020, ARC filed its counterclaim—without seeking leave of Court and without filing an Amended Answer.

Hazard Coal now argues that the counterclaim was improperly filed because ARC did not seek leave of Court to file an Amended Answer asserting the new counterclaim. [R. 113-1, pp. 9–10]. In response, ARC acknowledges that the Court's Scheduling Order required "motions to join additional parties or amend pleadings" to be filed by the above-outlined dates, and it states that its failure to so do was "simply an oversight by counsel who misread the Scheduling Order as saying that [ARC] had until June 30, 2020 to amend [its] pleadings." [R. 114, p. 4]. ARC insists that its failure to seek leave was "harmless error and from which the Plaintiff was not prejudiced in any way." *Id.* Hazard does not respond to ARC's prejudice argument. *See* [R. 115]. Neither party cites to any case law on this issue.

Federal Rule of Civil Procedure 15 governs the amendments of pleadings. Under that rule, a party has a limited time period in which to amend its pleadings as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). When that time period had passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In such cases, "[t]he court should freely give leave when justice so requires." *Id.* To determine whether "justice so requires," the court may consider "prejudice to the adverse party, failure to cure deficiencies by amendment, or futility of the amendment." *Helton v. Am. Gen. Life Ins. Co.*, 4:09-CV-118-M, 2010 WL 3516431, *3 (W.D. Ky. Sept. 1, 2010) (quoting *Thompson v. Mclean County*, 2006-CA-000172-MR, 2008 WL 744928, *4 (Ky. Ct. App. Mar. 21, 2008)) (internal quotation marks omitted).

---

[4] In its reply brief, Hazard states, "The Defendants claim that their counsel told counsel for Hazard Coal that they were going to file a counterclaim (which is not established in the record)." [R. 115, p. 12]. But ARC clearly states that it advised Hazard Coal of its intention to file the counterclaim during the June 5, 2020 telephonic conference, [R. 114, p. 4], and that *is* reflected in the record. *See* [R. 30].

- 11 -

Citing to this mandate to freely allow leave "when justice so requires," courts within the Eastern and Western Districts of Kentucky have allowed parties' amended answers and counterclaims to be considered properly introduced, despite the parties' failure to seek leave of court. *See Sazerac Brands, LLC v. Peristyle, LLC*, 3:15-cv-76-GFVT-EBA, 2017 WL 7805582, *2 (E.D. Ky. Jan. 25, 2017) (denying motion to strike amended counterclaims); *Helton*, 2010 WL 3516431, at *3 (denying motion to dismiss counterclaims). In those cases, the courts explained that "leave to amend would have been granted had it been sought and it does not appear that either party will be prejudiced by allowing the change." *Sazerac Brands, LLC*, 2017 WL 7805582, at *2; *see also Helton*, 2010 WL 3516431, at *3.

In the present case, it is undisputed that ARC's counterclaim, [R. 33], was not filed through an answer amended as a matter of course under Rule 15(a)(1), nor was it filed with Hazard Coal's consent or the Court's leave, as required by Rule 15(a)(2). Nevertheless, the Court will consider the counterclaim as properly filed, because leave would have been given had it been sought. On this point, the Court notes that this would be ARC's first amendment, and it seeks only to add a counterclaim; thus, there is no concern that ARC has been unable to cure any deficiencies though prior amendments. Further, Hazard Coal does not argue, and the Court does not find, that the proposed amendment would be futile. Indeed, Hazard Coal has not cited to any reason (beyond the failure to seek leave to amend) as to why the Court should have or would have denied ARC an opportunity to amend its answer to add this counterclaim. *See Helton*, 2010 WL 3516431, at *3 (noting that amendment was not futile, and the plaintiffs "have put forth no other reason why [the defendant] should not be allowed to amend his counterclaims and the Court finds none"). Moreover, Hazard Coal even goes so far as to say that its claims and the counterclaims arise out of the same operative facts. [R. 113-1, p. 11]. The Court agrees that

"[t]he factual overlap here is sufficient that trying the counterclaims in this action will promote judicial efficiency and cause no prejudice to either party." *Sazerac Brands, LLC*, 2017 WL 7805582, at *2.

On this last point, the Court again notes that Hazard Coal makes no claims of prejudice, nor expends any effort to respond to ARC's prejudice arguments. *See generally* [R. 115]. Hazard Coal does note that, under the Court's Scheduling Order, the parties had only two months to complete discovery after the close of the amendment deadlines. *Id.* at 11. Hazard Coal suggests that this was a short period of time in which to conduct discovery. *Id.* However, Hazard Coal does not explain what discovery, if any, it failed to obtain during the discovery window, nor did Hazard Coal (or ARC) ever seek an extension of the discovery deadlines. Moreover, ARC filed its counterclaim on June 30, 2020, the deadline for filing motions to amend, so it is unclear why Hazard Coal suggests that the discovery window was somehow shortened by the filing of the counterclaim. In other words, had ARC properly filed a motion seeking to amend its answer and add the counterclaim on June 30, 2020, the discovery window on that counterclaim would have remained the same. And importantly, Hazard Coal did not actively seek to dismiss the counterclaim[5] until October 14, 2020, well after the close of discovery, when it filed its first motion seeking summary judgment. *See* [R. 44, p. 21]. Lastly, the Court notes that Hazard Coal was aware of ARC's intention to file a counterclaim as early as June 5, 2020. [R. 30]. Simply stated, then, the Court finds no risk of prejudice in considering this counterclaim to be timely and properly filed.

---

[5] In Hazard Coal's answer to the counterclaim, it asserted (as its twenty-first affirmative defense) that "[t]he counterclaim is barred for failure to file a motion for leave to assert as required by Rule 15 of the Federal Rules of Civil Procedure." [R. 36, p. 16]. But it did not make any motions related to the counterclaim until it filed its first motion seeking summary judgment. [R. 44].

In sum, both of Hazard Coal's procedural arguments lack merit, and the Court will deny Hazard Coal's motion to the extent it seeks relief on these grounds.

### B. Substantive Arguments

Much of Hazard Coal's substantive arguments can be distilled as follows: ARC's permit-blocked status negates any allegation that Hazard Coal improperly interfered with ARC's business relationships. *See, e.g.*, 113-1, p. 7 ("The fact that the Defendants were legally barred from obtaining mining permits and conducting mining operations at the Perry County Mining Complex because they were permit blocked is the beginning and end of the inquiry."); *id.* at 8 ("Any inference of wrongdoing by Hazard Coal is wholly without basis due to the fact that the Defendants were permit blocked and barred from conducting mining operations as matter of law."); *id.* at 21 ("There could be no prospective business relationships involving coal mining operations until at least March 25, 2021, when the Defendants arguably became eligible to obtain mining permits."). Hazard Coal repeats this argument under various headings, including one relating to damages. *See id.* at 14, 20, 23. From the best the Court can tell, the crux of Hazard Coal's arguments appears to be that it could not have interfered with ARC's business relationships because ARC was permit-blocked and lacked a valid lease, and ARC was therefore unable to mine the Leased property.

In Kentucky, the tort of tortious interference with business relationships (also referred to as tortious interference with a prospective business advantage) requires the following: "(1) the existence of a valid business relationship or expectancy, (2) that the defendant was aware of this relationship or expectancy, (3) that the defendant intentionally interfered, (4) that the motive behind the interference was improper, (5) causation, and (6) special damages." *In re Hill*, 957 F.3d 704, 713–14 (6th Cir. 2020) (quoting *IB Agric., Inc. v. Monty's Plant Food Co.*, No. 3:12-

CV-00271-CRS, 2014 WL 4851774, at *9 (W.D. Ky. Sept. 29, 2014)); *see also Complete Animal Removal USA, Inc. v. Humane Wildlife Control Servs., LLC*, 3:24-cv-308-DJH, 2024 WL 3223936, *2 (W.D. Ky. May 24, 2024) (reciting same elements).

From the best the Court can tell, Hazard Coal's arguments regarding ARC's permit-blocked status go, at least in part, to the first element of a tortious interference claim: the existence of a valid business relationship or its expectancy. As to this element, Hazard Coal argues in its motion, "There could be no prospective business relationships involving coal mining operations until at least March 25, 2021, when the Defendants arguably became eligible to obtain mining permits." [R. 113-1, p. 21]. In its reply brief, it similarly argues that "no reasonable person and no reasonable jury could find that Hazard Coal committed any act or acts which interfered with the Defendant's ability to do something they were not legally permitted to do in the first place." [R. 115, p. 6]. And, without citation to any authority, Hazard Coal argues that ARC "must establish that it had the right to mine coal at the Perry County Mine Complex but for alleged interference by Hazard Coal." [R. 113-1, p. 20]. For support, Hazard Coal points to evidence in the record showing that ARC was, in fact, permit-blocked until March 2021 (a fact that ARC does not dispute), as well as this Court's ruling that the Lease terminated by May 2020. *See, e.g.*., [R. 81, p. 16 (finding that ARC was permit-blocked as late as March 25, 2021), pp. 29–36 (finding that the Lease terminated by May 2020)]; [R. 63 (Notice of Eligibility, with listing date of March 31, 2021)].

The Court does not find that the lack of a mining permit necessarily forecloses the existence of a business relationship or expectancy. Yet, ARC expends little effort to explain or cite to evidence establishing the existence of such a relationship or expectancy. Indeed, the *only* piece of evidence submitted in support of ARC's counterclaim is the affidavit of Mark C. Jensen,

- 15 -

its Chief Executive Officer. [R. 50-11 (Jensen Affidavit)]. The affidavit states that ARC has "made numerous attempts to re-start the mining operations" at the leased property and has "dealt with numerous equity investors and other individuals interested in providing financing to [ARC] to re-start the mining operation." *Id.* ¶ 3. It also alleges that Hazard Coal's representatives contacted a "potential investor[]" of ARC and advised him not to invest with ARC. *Id.* ¶ 7. But it provides no information about that potential investor or what business relationship, existing or expected, existed between that investor and ARC. It does not, for example, suggest that ARC and this investor had entered into a specific business deal or arrangement, or even that they were in negotiations for such a business arrangement. Simply put, the evidence supporting the existence of a business relationship or expectancy—an essential element of ARC's tortious interference claim—is flimsy and undeveloped, at best.[6] Regardless, even if the Court assumes that a valid business relationship or expectancy existed, the Court finds that ARC's counterclaim still fails on the other essential elements of causation and damages.[7]

As to these elements, Hazard Coal again argues that ARC "[was] not legally capable of mining coal" from the Leased property, because it lacked both a permit and a lease. [R. 114, p. 23]. Therefore, Hazard Coal argues, ARC cannot show that it "actually suffered damages as a result" of Hazard Coal's actions because ARC, not Hazard Coal, was responsible for ARC's

---

[6] ARC notes in its response brief that, prior to October 2019, "it conducted very limited discovery, if any at all, on the issues raised" in its counterclaim, and it "took no depositions inquiring abut (sic) the claims raised in the Counterclaim." [R. 114, p. 2]. It further explains that, since October 2019, Hazard Coal "has not conducted any additional discovery on the issues raised in the Counterclaim." *Id.* But ARC—not Hazard Coal—has asserted the counterclaim. It cannot now blame Hazard Coal for ARC's failure to engage in discovery on its own claim.

[7] Because it is granting the motion on these issues, the Court need not consider Hazard Coal's other arguments about the existence (or not) of a covenant of quiet enjoyment and the judicial statements privilege. Moreover, to the extent ARC may have attempted to bring a claim for breach of covenant of quiet enjoyment, it appears to have entirely abandoned any such claim. Indeed, the Court and the parties have consistently interpreted the counterclaim as asserting only a claim for tortious interference with business relationships.

permit-blocked status and its loss of the Lease for nonpayment. *Id.* at 23–24. In making this argument, Hazard Coal references both actual damages and proximate causation. *Id.*

ARC does not respond to Hazard Coal's causation and damages arguments. As the Sixth Circuit has explained, "[W]hen a party fails to respond to a motion or argument therein, the lack of response is grounds for the district court to assume opposition to the motion is waived, and grant the motion." *Hill v. Jones*, 5:18-cv-511-JMH, 2019 WL 4455982, *3 (E.D. Ky. Sept. 17, 2019) (citing *Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008); *Resnick v. Patton*, 258 F. App'x 789, 790–91 n.1 (6th Cir. 2007); *Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989)). For this reason alone, Hazard Coal's motion should be granted on the issues of causation and damages.

Regardless, the Court has considered the merits of Hazard Coal's arguments on causation and damages and finds that summary judgment should be granted on those grounds. Importantly, according to ARC's counterclaim, its response brief, and the Jensen affidavit, ARC argues that the actions of Hazard Coal interfered with ARC's ability to *restart* the mine. *See, e.g.*, [R. 33, ¶¶ 8–12]; [R. 50-11, ¶¶ 3–7]; [R. 114, pp. 5–6]. Indeed, when discussing the Jensen affidavit, ARC asserts, "Jensen (sic) assertions against [Hazard Coal] relate to interference and actions of its representatives with [ARC's] efforts to get the mining operations re-started." [R. 114, pp. 5–6]. ARC alleges in its counterclaim that this alleged interference caused "serious and detrimental management issues" as ARC "works with its workforce to re-start the mining operation," [R. 33, ¶ 11]; resulted in violations and "red tags" to be issued by the Kentucky Division of Mine Safety, thereby "hindering and stopping the efforts of [ARC] to re-start the mining operation, *id.* ¶ 12; and investors "walked away from deals being discussed" with ARC, *id.* ¶ 15. ARC also alleges that Hazard Coal's allegedly "unlawful actions have resulted in damages to [ARC] because

parties now refuse to enter into financial and business relationships with [ARC] because of the actions of [Hazard Coal]." *Id.* ¶ 16.

Again, the sole piece of evidence relied upon by ARC to support these assertions is the Jensen affidavit. That affidavit restates some of what is alleged in the counterclaim. For example, Jensen asserts that the alleged interference caused "serious and determinantal management issues," [R. 50-11, ¶ 5], and the Kentucky Division of Mine Safety "issued various violations and 'red tags.'" *Id.* ¶ 6. The affidavit does not discuss these allegations further (or offer any further proof in support of them), and it does not explain how the "management issues" and "red tags" resulted in damages to ARC. Moreover, Jensen's affidavit does not even address other allegations in the counterclaim, like the alleged deals that investors "walked away from," or the "parties that now refuse to enter into financial and business relationships with [ARC]." *See* [R. 33, ¶¶ 15–16]. And while ARC argues in its response brief that, "[h]ad [Hazard Coal's] representatives not interfered with [ARC's] business operations and business relationships, [ARC] would have accomplished the resolution of permit eligibility issues much sooner, which clearly resulted in damage to [ARC]," [R. 114, p. 6], it again fails to offer any proof whatsoever to support these statements. Simply put, ARC has offered no evidence or proof to support its position that the actions of Hazard Coal resulted in damages to ARC. *See generally Bill Call Ford, Inc.*, 48 F.3d at 205 (explaining that the non-moving party must produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial" (citation omitted)).

Moreover, the evidence of record does not support ARC's claims. ARC does not provide a clear timeline (or any dates) of the alleged interference. *See,* [R. 33; R. 50-11]. However, it filed its counterclaim on June 30, 2020, meaning the alleged interference took place prior to that

date. *See* [R. 33]. Then, in its response brief, it clarifies that "some of the allegations" in its counterclaim "did not occur, giving rise to the claims made in the Counterclaim, until after the original Answer was filed" on January 21, 2020. [R. 114, p. 5]; [R. 5 (Original Answer)]. But by ARC's own admission, its permit eligibility issues were not resolved until March 2021. [R. 114, p. 6]. This means the alleged interference occurred prior to resolution of ARC's permit-blocked status, or in other words, prior to ARC being able to restart the mining operations. And importantly, the Lease terminated in May 2020. *See* [R. 81 (finding that the Lease terminated in May 2020 due to ARC's failure to pay certain royalties)]. After that date, ARC had no legal right to mine on the property, with or without a permit. Given this timeline, and the lack of any detail or proof provided by ARC to support or even explain its claims (and in particular, to tie any of Hazard Coal's alleged actions to specific damages suffered by ARC), the Court cannot find that the alleged actions of Hazard caused any harm to ARC.

In sum, Hazard Coal has presented evidence demonstrating no genuine dispute as to the issues of causation and damages because ARC was permit-blocked during the relevant timeframe it was attempting to restart the mine and ARC breached the Lease by May 2020. In response, ARC has failed to produce "specific facts, supported by the evidence in the record" that it was Hazard Coal's actions, not ARC's own permit-blocked status and breach of the Lease, that caused any alleged damages to ARC. *See generally Bill Call Ford, Inc.*, 48 F.3d at 205 (explaining that the non-moving party must produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial" (citation omitted)). As a result, the Court will grant Hazard Coal's motion seeking summary judgment on ARC's counterclaim.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1. The Motion for Summary Judgment on Defendant's Counterclaim filed by Plaintiff Hazard Coal Corporation, [**R. 113**], is **GRANTED**.

2. On or before **Monday, October 14, 2024**, the parties **SHALL** file a joint status report advising the Court of any developments in the Sixth Circuit appeal and any settlement efforts, and whether the parties want the Court to set a trial date at this time. If the parties request the Court to set a trial date, they shall provide three agreed-upon potential trial dates between April 14, 2025 and May 30, 2025. They shall also provide the estimated length of trial.

This the 23rd day of September, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY